IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 00-11223

———————————————


RICHARD KAUFMAN, Etc; ET AL

                                        Plaintiffs


RICHARD KAUFMAN, DR, On behalf of himself and all others similarly
situated; JACK MARUT, On behalf of himself and all others similarly
situated; C ANTHONY WAINSRIGHT, On behalf of himself and all others
similarly situated; JEFFREY KRASNOFF, DR, On behalf of himself and
all others similarly situated

                                        Plaintiffs-Appellees


                        versus


ALLIED PILOTS ASSOCIATION; ET AL

                                        Defendants


ALLIED PILOTS ASSOCIATION; RICHART T LAVOY; BRIAN A MAYHEW; DAVID
ALDRICH; STANLEY BISSELL; J S DITTY; ERNEST DRYER; DAVID DUQUEMIN;
MARK HUNNIBEL; JEFF MARCHAND; STEVE ROACH; RANDY TROMMER

                                        Defendants-Appellants


———————————————


STEVEN CARLI, On behalf of himself and all others similarly
situated; SHON PREJEAN, On behalf of himself and all others
similarly situated

                                        Plaintiffs-Appellees


                        versus


ALLIED PILOTS ASSOCIATION; RICHART T LAVOY; BRIAN A MAYHEW

                                        Defendants-Appellants


———————————————


CENTER FOR REHABILITATIVE MEDICINE

                                        Plaintiff-Appellee


                        versus


ALLIED PILOTS ASSOCIATION

                                        Defendant-Appellant

---

JIM CASHION, Individually and on behalf of the Plaintiff Class;
JOELLEN CASHION, Individually and on behalf of the Plaintiff Class

        Plaintiffs-Appellees

versus

ALLIED PILOTS ASSOCIATION; ET AL

        Defendants

ALLIED PILOTS ASSOCIATION; RICHARD T LAVOY; BRIAN A MAYHEW; L G
FOSTER; ROBERT AMES; NORMAN A PATTERSON, JR; DENNIS M BRESLIN

        Defendants-Appellants

---

MARK LEWIS, on behalf of himself and all others similarly situated

        Plaintiff-Appellee

versus

ALLIED PILOTS ASSOCIATION; RICHARD T LAVOY; BRIAN A MAYHEW

        Defendants-Appellants

---

NANCY GEIDEL; ET AL

        Plaintiffs

NANCY GEIDEL; RALPH A MACDONALD; MARY C CASCINO; DAVE ROGERS;
CAROLYN ROGERS

        Plaintiffs-Appellees

versus

ALLIED PILOTS ASSOCIATION

        Defendant-Appellant

---

Appeal from the United States District Court
for the Northern District of Texas

---

November 21, 2001

Before HIGGINBOTHAM, BARKSDALE, and STEWART, Circuit Judges.

2

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A union of airline pilots violated the order of a federal court by continuing its work slowdown. The union has since paid substantial fines for violating the order and now faces suits seeking money damages under state law for the stoppage damages caused by the slowdown activity that violated the court order. These claimants attempt to run their state claims around *Garmon* preemption under an argument that state law would not here interfere with the federal labor machinery and its distinct remedial schemes for labor peace because the conflict complained of violates a federal court order. At the same time the state law claimants argue that they are not seeking to supplement the federal order by their suits. The district court accepted these arguments. We do not and reverse. We are persuaded that the claims are preempted under the *Garmon* doctrine and do not reach the question of preemption under the Airline Deregulation Act.

I

The Allied Pilots Association is the exclusive bargaining agent for the pilots of American Airlines, Inc. From February 6 through February 9, 1999 the APA staged a "sick-out"—an organized false reporting of illness to effect a work stoppage. On February 10, American sought and received a temporary restraining order from

the United States District Court for the Northern District of Texas against the APA. The TRO, among other things, required the APA to make "all reasonable efforts" to end the sick-out. The APA manifestly did not do so, and on February 12, the trial judge heard American's motion to hold the APA in contempt. Ultimately, the district court awarded American $45 million in compensatory damages,[1] a ruling which was upheld by this Court.[2]

This is a class action brought against the APA to recover economic damages claimed by over 300,000 displaced passengers as a result of the sick-out. The plaintiffs originally asserted both federal and state claims,[3] and the district court dismissed all claims with prejudice except a state claim of tortious interference with contract arising from post-TRO conduct of the APA.[4] Finding that this claim was not preempted by federal law, the district court dismissed the claim without prejudice to its being refiled in state court. The APA now appeals that decision.

---

[1] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp.2d 909, 913 (N.D. Tex. 1999).

[2] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 586-87 (5th Cir. 2000).

[3] The plaintiffs originally asserted claims under (1) the Railway Labor Act; (2) the Racketeer Influenced and Corrupt Organizations Act; (3) state common law claims of civil conspiracy, negligence per se, and tortious interference with contract.

[4] The district court dismissed all of the plaintiffs' claims that were predicated on pre-TRO conduct, including tortious interference with contract, which was dismissed on *Garmon* preemption grounds. The plaintiffs do not appeal the dismissal of their pre-TRO-based claims and apparently concede that those claims are properly *Garmon* preempted. Therefore, our only task is to decide whether the entering of the TRO changes this result for their post-TRO tortious interference claims.

4

II

A

We review questions of federal preemption *de novo*, including *Garmon* preemption, which gets its name from the Supreme Court's ruling in *San Diego Building Trades Council v. Garmon*.[5] In *Garmon*, an employer sued a union in state court to recover damages from picketing that allegedly violated the National Labor Relations Act. The Court held that this state remedy was preempted by federal law because the state courts must yield to the exclusive jurisdiction of the NLRB—even when the NLRB has declined to take jurisdiction.[6] Preemption is necessary because "the exercise of state power over a particular area of activity threaten[s] interference with the clearly indicated policy of industrial relations ...."[7] Concerned with "conflict in its broadest sense" the Court eschewed a focus on the type of state regulation or claim, and adopted an approach that looks to the "nature of the activities which the States have sought to regulate."[8] *Garmon* has broad scope, and requires federal preemption of state causes of action "if they attach liability to

---

[5] 359 U.S. 236 (1959). *Garmon* preemption, first applied in the context of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, has been extended to the RLA. *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 (1969).

[6] *Garmon*, 359 U.S. at 238.

[7] *Id.* at 243.

[8] *Id.*

5

conduct that is arguably protected ... or arguably prohibited" by federal labor relations law.[9]

*Garmon* itself recognized two exceptions to preemption. First, some conduct will "touch[] interests so deeply rooted in local feeling and responsibility that ... [the Court] could not infer Congress had deprived the States of the power to act."[10] The classic example of this exception, provided by the Court in *Garmon* itself,[11] is that of union activities involving violence.[12] The second exception is for matters only of "peripheral concern" to federal labor relations law.[13] Neither of these exceptions apply here. The sick-out was non-violent and certainly, irrespective of the TRO issue, cannot be characterized as "peripheral" to labor relations law, since it is itself a work stoppage, one which a district court found to be prohibited by the RLA.[14]

---

[9] *Mobile Mechanical Contractors Ass'n, Inc. v. Carlough*, 664 F.2d 481, 487 (5th Cir. 1981).

[10] *Garmon*, 359 U.S. at 244.

[11] *Id.* at 247 ("It is true that we have allowed the States to grant compensation for the consequences ... of conduct marked by violence and imminent threats to the public order.").

[12] *See, e.g., Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 139-40 (1957) (upholding state court injunction against violent picketing).

[13] *Garmon*, 359 U.S. at 243.

[14] The RLA requires that "minor disputes" including those over the meaning of a collective bargaining agreement provision on pay, rules, or working conditions, be submitted to binding arbitration in the event that negotiations fail to produce a solution. 45 U.S.C. § 152. Federal district courts may (as here) enjoin strikes over minor disputes in enforcing the RLA. *Consolidated Rail Corp. v. Railway Labor Executives Ass'n*, 491 U.S. 299, 304 (1989).

The Court has explicitly rejected a formalistic implementation of *Garmon*, and invited a balancing of state interests and federal regulatory interests in analyzing the preemption question.[15] The Court has thus refused to apply *Garmon* preemption where "it is safe to presume that judicial supervision [by the states] will not disserve the interests promoted by the federal labor statutes."[16]

At the same time, *Garmon* preemption is not confined to state claims made by parties to the labor relationship and third-party claims may also be preempted, because they similarly threaten the balance of labor-management relations.[17] In *Wisconsin Department of Industry, Labor & Human Relations v. Gould, Inc*.,[18] the Court reaffirmed the *Garmon* preemption principle as "prevent[ing] states not only from setting forth *standards of conduct* inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or

---

[15] *Farmer v. United Brotherhood of Carpenters and Joiners of Am.*, 430 U.S. 290, 297 (1977) (stating that a court must "determine the scope of the general rule by examining the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme.").

[16] *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297-98 (1971); *see also Windfield v. Groen Div. Dover Corp.*, 890 F.2d 764, 766 (5th Cir. 1989).

[17] *United Mine Workers v. Gibbs*, 383 U.S. 715, 718-20 (1966) (preempting damages remedy under state law for injury resulting from peaceful portion of union protesting at mine that caused contractor to lose employment and haulage contract); *Jackson Terminal*, 394 U.S. at 381-82 (holding that state court could not issue injunction against peaceful strike sought by third-party railroad terminal operator to avoid economic damages from shutdown of terminal).

[18] 475 U.S. 282 (1986).

arguably prohibited by the Act."[19]  In *Gould* the Court struck down a Wisconsin statute that prevented the state from doing business with companies that had been judicially determined to have committed three separate violations of the NLRA within a five year period.[20]  "That Wisconsin has chosen to use its spending power rather than its police power in enacting the debarment statute does not significantly lessen the inherent potential for conflict when two separate remedies are brought to bear on the same activity."[21] *Garmon* preemption must extend to all types of state regulation that conflicts with federal labor relations law, whether that is by state statute, or state judicial supervision, whether in litigation between parties to the labor relationship or between downstream injured persons and parties to the labor relationship.

B

We have previously stated that *Garmon* preemption is required when a state cause of action poses "a serious risk of conflict with national labor policy."[22]  The Court has directed that we look not to the effect on labor-management relations of allowing a particular claim to proceed, but rather to conflict in the

---

[19] *Id.* at 286 (emphasis added).

[20] *Id.* at 283.

[21] *Id.* at 289.

[22] *Carlough*, 664 F.2d at 487.

8

"broadest sense."[23] *Gould* reminds us that adding state remedies or penalties to the mix would be a "conflict" necessitating preemption.[24]

The plaintiffs take a narrow view of what constitutes such a conflict and argue that the federal and state legal regimes cannot be in conflict in this case, since a violation of the TRO is, of course, a violation of federal law. If the two regimes are not contradictory, they reason, there can be no preemption. This argument cannot stand in light of *Gould*. In *Gould* the plaintiff was being punished by the state remedial scheme for its *violations* of federal labor law. There was no contradiction between the two regimes, only a supplementation of the federal remedial scheme by the state. Therefore, the plaintiffs' niggardly view of "conflict" itself conflicts with the Supreme Court's decision in *Gould*, and must be rejected.

*Garmon* preemption does not depend on the merits of an adjudication of the conduct's legality under federal labor law—both prohibited and protected conduct are shielded from liability under state law. Plaintiffs argue, however, and the district court agreed, that the TRO put the APA on notice that its conduct was

---

[23] *Garmon*, 359 U.S. at 242 ("The nature of the judicial process precludes an ad hoc inquiry into the special problems of labor-management relations involved in a particular set of occurrences in order to ascertain the precise nature and degree of the federal-state conflict.").

[24] *Gould*, 475 U.S. at 286 (quoting *Garmon*, 359 U.S. at 247 ("[T]o allow the State to grant a remedy ... which has been withheld from the National Labor Relations Board only accentuates the danger of conflict ....")).

illegal, and therefore *Garmon* preemption is not needed to vindicate the goals of federal labor law.  We must disagree—if conduct is *clearly* protected or prohibited by federal labor law, to our eyes the case for preemption is stronger.[25]  Consequentially, the issuance of the TRO, indicating that the sick-out was likely to be found illegal under the RLA, only enhances the case for preemption of the state claim here.  The concern of *Garmon* is not so much with the righting of labor wrongs, the concern of the labor relations laws themselves, as with the uniformity and singularity of remedy provided by federal law.  It is a national labor policy—as this case makes vivid.

The district court also found that attaching liability to post-TRO conduct that violates state law will not meaningfully disrupt labor-management relations—that is, that it will not seriously harm the federal regulatory scheme for labor relations. *Garmon* preemption requires the balancing of state interests with federal regulatory interests.[26]  However, irrespective of the state

---

[25] *Gould*, 475 U.S. at 283-84 (finding that *Garmon* required preemption of statutory regime that punished firms that "found by judicially enforced orders of the National Labor Relations Board to have violated the NLRA in three separate cases within a 5 year period."); *see also Sears, Roebuck, and Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 187 (1978) (distinguishing those activities that are "arguably" protected or prohibited from those, even more deserving of preemption, where "it is clear or may fairly be assumed that the subject matter which the state court sought to regulate ... is either prohibited or protected by the Federal Act." (internal quotation omitted)).

[26] *See Sheet Metal Workers Local Union No. 54, AFL-CIO v. E.F. Etie Sheet Metal Co.*, 1 F.3d 1464, 1470 (5th Cir. 1993) ("That inquiry requires not only looking to the factual bases of each controversy, but also examining the interests protected by each claim and the relief requested.").

interest in protecting private parties from interference with their freedom of contract,[27] the activities here are so fundamental that *Garmon* preemption must immunize them from state tort liability if the RLA structure is to be preserved. While courts have refused to apply *Garmon* preemption to state tort claims that served substantial state interests and did not threaten interference with the federal regulatory scheme,[28] this is not our case. Slicing the claim into before and after the TRO does not change the reality that the state law is being asked to take hold of the same controversy as the federal labor laws.

Finally, we are not persuaded by the plaintiffs' effort to distinguish the pre-TRO conduct of the APA from its post-TRO conduct.[29] "It is the conduct being regulated, *not the formal description of governing legal standards*, that is the proper focus

---

[27] *Cf. Local 926, Int'l Union of Operating Engineers AFL-CIO v. Jones*, 460 U.S. 669, 689 (1983) (Rehnquist, J., dissenting) ("There can be no doubt that safeguarding the integrity of contractual relations is an interest of paramount importance in an economy such as ours.").

[28] *See, e.g., Farmer,* 430 U.S. at 304-05 (refusing to preempt state claim of intentional infliction of emotional distress arising out of discrimination in hiring hall practices because proof of state claim required proof of "outrageous conduct" and the "potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens"); *Belknap v. Hale*, 463 U.S. 491, 510-12 (1983) (holding breach of contract and misrepresentation claims by replacement workers against employer not preempted even though conduct was arguably prohibited by NLRA because the Board would focus on strikers' rights, not replacement workers' rights); *Windfield,* 890 F.2d at 769-70 (refusing to preempt state claims arising out of employer's personal guarantee to former employee because they required only a "discrete, narrow inquiry into the relationship between [the employee] and his former employer.").

[29] The plaintiffs argued in the district court that their claims based upon pre-TRO conduct were not *Garmon* preempted, but the district court held that those claims were preempted, and the plaintiffs do not appeal that determination.

11

of concern."[30]  The existence of a TRO does not transform conduct constituting a work-stoppage, and therefore central to federal labor relations law, into conduct falling outside of the ambit of *Garmon*.  We note also that any effort to characterize this suit as arising out of a violation of the TRO encounters an additional blockade—the plaintiffs are not entitled to any remedy for violation of a TRO to which they are not a party.[31]

## III

The APA also argues that the plaintiffs' claims are preempted by the Airline Deregulation Act.  Since we have concluded that those claims are *Garmon* preempted, we need not reach the question of ADA preemption.

## IV

Because the plaintiffs' state law claims of tortious interference with contract are *Garmon* preempted, we REMAND this case to the district court and instruct that the claims be DISMISSED with prejudice.

---

[30] *Lockridge*, 403 U.S. at 292 (emphasis added) (applying *Garmon* preemption to a state law claim for breach of contract arising out of a union's discrimination against the plaintiff).

[31] *Northside Realty Associates, Inc. v. United States*, 605 F.2d 1348, 1356–57 (5th Cir. 1979) (holding that compensatory damages for nonparties could not be granted as part of Government's remedy in civil contempt proceeding against real estate corporation).